GILLESPIE, Presiding Justice.
Mrs. Nancy Fletcher Nemitz, complainant below and appellee here, sued her mother Mrs. N. E. Fletcher, defendant below and appellant here, in the chancery court and sought a decree establishing a constructive trust on certain real property. Mrs. Nemitz charged that she and her family were living in Cleveland, Ohio, and Mrs. Fletcher was living in Cleveland, Mississippi, and in the year 1947 Mrs. Fletcher made several trips to Cleveland, Ohio, culminating in an oral agreement between the parties. According to this agreement, Mrs. Nemitz’s husband was to give up his job in Cleveland, Ohio, and the Nemitz family would move to Cleveland, Mississippi, and enter the business of operating a flower shop. In order to induce Mrs. Nemitz and her family to make the move to Mississippi, Mrs. Fletcher agreed to borrow money and construct a building on a lot owned by Mrs. Fletcher *233 in Cleveland, Mississippi, suitable for use in the flower business. The bill charged that there was a confidential relationship between Mrs. Fletcher on the one hand and Mr. and Mrs. Nemitz on the other, and that Mr. and Mrs. Nemitz relied on the promise of Mrs. Fletcher to convey the flower shop property (land and building) when Mr. and Mrs. Nemitz paid off the loan, the proceeds of which were to be used for construction of the building. The original bill charged that the building was constructed with money borrowed by Mrs. Fletcher from a local bank, and the Nemitz family moved to Cleveland, Mississippi, and entered the flower business 1948, and between that time and 1964, when the original bill was filed, Mr. and Mrs. Nemitz had paid off the $7,000 loan used in connection with the construction of the building. It was charged that Mrs. Fletcher was guilty of fraud and unconscionable conduct in refusing to carry out her agreement to deed the flower shop property to Mrs. Nemitz, and that Mrs. Fletcher was thereby unjustly enriched. The bill of complaint also alleged that there was another agreement concerning the residence owned by Mrs. Fletcher.
The chancellor found for Mrs. Nemitz as to the flower shop property and adjudged that the circumstances raised a constructive trust, and the final decree appointed a special commissioner to convey the flower shop property to Mrs. Nemitz. The chancellor found that the evidence was not clear concerning the alleged constructive trust as to the residence property, and found for Mrs. Fletcher on that issue. Mrs. Fletcher appealed to this Court and died before the case came on for hearing, and the appeal was revived in the name of Mrs. Willie Stovall, Executor of the Estate of Mrs. N. E. Fletcher.
The main question is whether the facts as found by the chancellor are sufficient to raise a constructive trust as to the flower shop property. There is no issue in this Court as to the residence. We hold that the facts are insufficient to raise a constructive trust as to the flower shop property.
Mrs. Fletcher, a widow, was eighty-six years old when this case was tried. She had three children, Mrs. Nancy Fletcher Nemitz, who was fifty-nine years of age and whose husband, C. C. Nemitz, died several years before this case was tried, Mrs. Willie Fletcher Stovall, and John A. Sto-vall. Mrs. Nemitz was the oldest child. For a long time Mrs. Fletcher had lived in Cleveland, Mississippi, and prior to 1948 Mrs. Nemitz, her husband, and three children lived in Cleveland, Ohio, where Mr. Nemitz was employed at a salary of about $7,500 or $8,000 per year. In 1948 Mrs. Nemitz and her family moved to Cleveland, Mississippi, and Mr. and Mrs. Nemitz began operation of the Fletcher Flower Shop in a building constructed with funds borrowed by Mrs. Fletcher on a lot owned by Mrs. Fletcher. The funds expended in constructing the flower shop building amounted to $7,000. This money was borrowed by Mrs. Fletcher from a local bank and was secured by a deed of trust on the flower shop property. The note was payable in monthly installments and was renewed annually by Mrs. Fletcher. All installments on this note were paid by Mrs. Nemitz or her husband out of funds realized from the operation of the Fletcher Flower Shop. The total amount of principal and interest thus paid was $9,089.45. Mr. C. C. Nemitz died several years before this suit was filed, and the Nemitz children executed a quit claim deed to their mother, Mrs. Nemitz, conveying any interest that they might have inherited from their father in the flower shop property.
After the Nemitz family moved to Cleveland, Mississippi, they lived rent free in the home of Mrs. Fletcher for about three years. Mrs. Fletcher’s home was too small to accommodate herself and the Nemitz family, and she, Mrs. Fletcher, borrowed $7,500 and used the proceeds to add more rooms to her home. This loan was secured by a deed of trust on the home property. *234 Thereafter, the Nemitz family occupied the new addition to Mrs. Fletcher’s home. They never paid any rent, but Mrs. Nemitz made the payments on the loan, the proceeds of which were used to make the improvements on the home, and expended $9,440.27 for that purpose. Mrs. Nemitz signed the deed of trust securing the $7,500 borrowed on the home, and the deed of trust recited that Mrs. Nemitz had no interest in the property. There was still a balance due on the loan at the time of trial, and the Nemitz family -continued to live in this home up until the time this case was tried in the chancery court.
Prior to removal of the Nemitz family to Cleveland, Mississippi, Mrs. Fletcher went to Cleveland, Ohio, where she and Mrs. Nemitz took training in the operation of a flower shop. After the flower shop was opened, it was operated and the books were kept, showing that Mr. and Mrs. Nemitz were partners operating under the name of Fletcher Flower Shop. Mrs. Fletcher worked in the flower shop from the time it opened until her health declined about 1955, but she never received any pay for these services and received no part of the profits from the business. Mrs. Fletcher put an additional $6,800 into the flower shop business, using her personal funds, some of which were realized from the sale of vacant lots owned by her. Mr. and Mrs. Nemitz never repaid any part of this $6,800, and the record indicates that Mrs. Fletcher never requested that it be repaid. All of the income from the Fletcher Flower Shop was received by Mr. and Mrs. Nemitz until his death, and after he died, the flower shop was operated by and in the name of Mrs. Nemitz. All of the monthly payments made by Mr. and Mrs. Nemitz from 1948 until 1964 to repay funds borrowed by Mrs. Fletcher for the construction of the flower shop, totaling $9,089.45, were claimed by Mr. and Mrs. Nemitz on their income tax returns until Mr. Nemitz died, and thereafter by Mrs. Nemitz on her individual returns, as rental expenses in the operation of the flower shop. All of said payments were reported by Mrs. Fletcher over the entire period on her personal income tax returns as rental income, and she paid tax thereon as a part of her income. Mrs. Fletcher paid all ad valorem taxes on the flower shop property and took credit therefor on her income tax returns. Mr. and Mrs. Nemitz paid the fire insurance premiums on the flower shop during the period in question.
Mrs. Fletcher received no rent on the flower shop property, unless the monthly payments made by Mr. and Mrs. Nemitz on the loan were rental, which Mrs. Nemitz denies.
The foregoing facts are undisputed. The main dispute in the testimony is between Mrs. Nemitz and Mrs. Fletcher concerning the oral agreement entered into in Ohio prior to 1948. Mrs. Nemitz testified that Mrs. Fletcher agreed that if Mr. and Mrs. Nemitz and the children would move to Cleveland, Mississippi, Mrs. Fletcher would borrow funds and construct a building for use as a flower shop and set up Mr. and Mrs. Nemitz in the flower business, and that Mrs. Fletcher would deed the flower shop property to Mrs. Nemitz when the loan was repaid. Mrs. Fletcher denied that she agreed to deed the property to Mrs. Nemitz, her contention being that she was trying to get the Nemitz family out of undesirable living conditions in Cleveland, Ohio, and set them up in business in Cleveland, Mississippi. Mrs. Fletcher was in the funeral home business in a building next door to where the flower shop was established, and she thought that there was a fine opportunity for a flower shop business.
The chancellor’s finding of fact as to the flower shop property is as follows:
(A)s to the real property referred to as the Flower Shop, I find the following facts:
(1) That there was an agreement between the parties prior to the move of the Nemitz family to Mississippi, substantially as testified to by Mrs. Nemitz, *235 to-wit: that if the Complainant and her husband would move back to Mississippi, and would repay the funds necessary for construction of a flower shop on the property of Defendant, adjacent to the funeral home in which Defendant had an interest, the Defendant would convey that property in fee simple to Complainant (or to Complainant and her husband, it having been stipulated by the parties that Complainant now owns any interest which might have been owned by the deceased husband of Complainant).
(2) That Complainant’s husband left his employment, and Complainant and her family moved to Mississippi and entered upon the flower shop operation, in reliance upon said agreement with Defendant, and that such actions of Complainant and her family constituted a substantial change in position which would not have been made in the absence of such an agreement.
(3) That there was a fiduciary relationship existing between Defendant on the one hand and Complainant and her husband on the other, as a result of which the Complainant and her husband placed reliance upon said agreement of the Defendant; and that they would not have so relied upon such an agreement made by a stranger not in such a ficuciary (sic) relationship.
(4) That the Complainant and her husband fully performed the agreement, and that the indebtedness incurred for construction of the Flower Shop has long ago been paid by Complainant; that the present remaining indebtedness to Cleveland State Bank represents a later loan or loans for the purpose of improvements, maintenance or operation of the Flower Shop.
(5) That there was never any payment of rent to the Defendant on the Flower Shop property, nor was there any agreement to do so; and that Complainant’s payments to Cleveland State Bank were treated by the parties as rent so that the interest on said debts and depreciation and taxes on the building might be taken as expenses by Defendant as record title owner for tax purposes.
Based upon the above finding of fact, it is my opinion that the requirements for finding a constructive trust have been met, and the decree to be entered will find and adjudicate that Defendant holds title constructively in trust for the benefit of Complainant.
I.
In her first assignment of error, Mrs. Fletcher raises the question whether the chancellor was manifestly wrong in finding as a fact that Mrs. Fletcher orally agreed that if Mrs. Nemitz and family would move to Mississippi she, Mrs. Fletcher, would borrow money with which to construct on Mrs. Fletcher’s lot a building suitable for the operation of a flower shop by Mr. and Mrs. Nemitz, and that when Mrs. Nemitz paid off the said loan, she would deed the property to Mrs. Nemitz. Mrs. Fletcher argues convincingly that the actions of the parties were inconsistent with the existence of the alleged oral agreement, and that this essential fact was not established by clear and convincing evidence. See Sojourner v. Sojourner, 247 Miss. 342, 153 So.2d 803, 156 So.2d 579 (1963). However, we are reluctant to hold that the chancellor was manifestly wrong in holding that there was an oral agreement as contended by Mrs. Nemitz. We uphold the chancellor as to this finding of fact.
Mrs. Fletcher next contends that even if the chancellor’s findings of fact are correct, a constructive trust did not arise therefrom. Mrs. Fletcher bases her argument mainly on the ground that the oral contract involved in this case is unenforceable under the statute of frauds, Mississippi Code Annotated section 264 (1956), *236 unless a trust shall arise or result, by implication of law “ * * * out of a conveyance of land * * * ”, as provided in the last sentence of Mississippi Code Annotated section 269, and there was no conveyance in this case out of which a constructive trust could arise. We pretermit consideration of this interesting question, and base our decision on the absence of fraud or other unconscionable conduct on the part of Mrs. Fletcher and the fact that she was not unjustly enriched, irrespective of whether a constructive trust must arise out of a conveyance.
j' In Saulsberry v. Saulsberry, 223 Miss. 684, 690, 78 So.2d 758, 760 (1955), this Court stated the general rule as to when ■and under what circumstances a constructive trust will arise, using the following language:
i A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy. 54 Am.Jur., Trusts, Sec. 218. A constructive trust is an appropriate remedy against unjust enrichment. Ibid., Sec. 219. The mere failure to perform an agreement does not raise a constructive trust, but a breach of an agreement or promise may, in connection with other circumstances, give rise to such a trust. A distinction exists between the breach of a promise not fraudulently made and the breach of a promise made with no intention of performing it. Ibid., Sec. 221.
This general statement of the law was reaffirmed in Sojourner, supra. In Russell v. Douglas, 243 Miss. 497, 506, 138 So.2d 730, 734 (1962) it was stated: “The existence of the confidential relationship between appellant and appellee under the circumstances prohibited appellee from becoming unjustly enriched at appellant’s expense.” In the case before the Court we fail to find any fraud, actual or constructive, or other unconscionable conduct on the part of Mrs. Fletcher. There is no evidence of any abuse of the confidential relationship said to exist between Mrs. Fletcher and Mrs. Nemitz. Unjust enrichment is an essential fact in nearly every case where a constructive trust is raised. Mrs. Fletcher was not enriched. If a constructive trust is raised and the flower shop property is given to Mrs. Nemitz, Mrs. Fletcher will experience a total loss of the following: (1) the lot of land where the flower shop is located, (2) the $6,800 she voluntarily put into the flower shop business, (3) nearly five years of work in the flower shop for which she received nothing, and (4) all sums paid out for ad valorem taxes on the flower shop property from 1948 to 1964. If Mrs. Nemitz’s claim of a constructive trust is rej ected, Mrs. Fletcher still will have lost items (2) and (3). On the other hand, a reversal of the decree and denial of Mrs. Nemitz’s claim of a constructive trust will not result in a loss to Mrs. Nemitz of the amount paid on the flower shop construction loan, as that item will be adjudged to constitute a lien on the premises subject to being offset by the fair rental value of the flower shop property, as hereinafter provided. The fact that the Nemitz family left Ohio, and Mr. Nemitz quit his job, is not a determinative factor. Such collateral personal decisions attend most business decisions. It may be a fact that Mrs. Fletcher meddled in her daughter’s affairs, but under the evidence in this case it cannot be said that Mrs. Fletcher was guilty of any fraud or unconscionable conduct in connection with Mr. Nemitz quitting his job in Ohio. There is no proof that Mrs. Fletcher did anything more than spend a great deal of time and money, foolishly perhaps, in an effort to put her daughter and her son-in-law in the flower business in Cleveland, Mississippi, and it is not *237 shown that the welfare of the Nemitz family was worsened by the move to Mississippi.
We hold, as a matter of law, that the facts and circumstances shown by the evidence, when viewed in the light most favorable to Mrs. Nemitz, were insufficient to raise a constructive trust. The decree is reversed insofar as it established a trust on the flower shop property in favor of Mrs. Nemitz.
We hold that the oral promise of Mrs. Fletcher to convey the flower shop property to Mrs. Nemitz is unenforceable under the statute of frauds. Miss. Code Ann. § 264 (1956).
Mrs. Fletcher concedes that if there was an oral promise to convey, Mrs. Nemitz has an equitable lien on the flower shop property to secure the sums paid on the construction loan which the trial court held to be purchase money payments. We further hold that there should be an adjustment of the mutual accounts of the parties and that Mrs. Nemitz should be charged with a reasonable rental for the use and occupation of the premises. Culpepper v. Chain, 202 Miss. 309, 32 So.2d 266 (1947). In Harvey v. Daniels, 133 Miss. 40, 96 So. 746 (1923), the Court declined to permit recovery for the use and occupation of lands. The owner brought an ejectment suit to recover lands plaintiff had orally agreed to sell defendant, and defendant had paid practically all of the purchase price. In that case the owner-vendor under the oral contract sought recovery for the use and occupation of the premises as an item of affirmative relief. The later case of Culpep-per v. Chain, supra involved a suit where the vendee, under an unenforceable oral contract to purchase, sought affirmative relief, and the Court remanded the case for adjustment of the mutual accounts involving value of improvements and mesne rents. The Court stated that it made no adjudication as to such items, and we understand that statement to refer to facts and figures, and not as meaning that the trial court could adjudicate the legal question whether rents would be considered in the adjustment. There is no fraud on the part of either party in the case before the Court, and there is no valid reason why the Court should not adjust the mutual accounts equitably so as to restore the status quo as near as it reasonably can. On remand, Mrs. Nemitz should be credited with all sums paid to the bank in liquidation of Mrs. Fletcher’s notes executed for the purpose of borrowing funds for construction of the flower shop, plus any sums paid out by Mrs. Nemitz for any improvements that Mrs. Fletcher should have made if the relation of landlord and tenant had existed, also all sums paid out by Mrs. Nemitz for fire and extended coverage insurance on the flower shop building. Mrs. Fletcher should be allowed credit against the sums allowed Mrs. Nemitz for the reasonable value of the use and occupation of the flower shop property. It is not intended to limit the factors to be considered by the chancellor in adjusting the mutual accounts of the parties if it should develop that there are other items not considered by this Court.
The decree is reversed, and judgment is entered in this Court adjudging that the facts did not give rise to a constructive trust, and the case is remanded for adjustment of the mutual accounts between the parties.
Reversed and remanded.
RODGERS, JONES, BRADY, and IN-ZER, JJ., concur.